IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| KEVIN A. LAVORGNA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-1610 |
| JOHN E. POTTER, Postmaster General, U.S. | ) |
| | ) |
| Postal Service, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.


OPINION and ORDER OF COURT

SYNOPSIS

Plaintiff, a letter carrier, contends that he was discriminated against on the basis of his gender and retaliated against for having engaged in protected activity, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). The Government argues that it is entitled to summary judgment on Plaintiff's claims. The Motion is granted with respect to the retaliation claim and denied in all other respects.

1

OPINION

Plaintiff Kevin Lavorgna ("Lavorgna") has worked as a letter carrier since 1989. During that time he has been assigned to the Cannonsburg, Pennsylvania facility. Lynn Jones ("Jones"), another letter carrier, was one of Lavorgna's co-workers at the Cannonsburg facility.

Lavorgna has proffered evidence suggesting that, on December 20, 2003, Jones was upset with Lavorgna because she believed that he was treated more favorably than she. Shortly thereafter, on that same day, she accused Lavorgna of making a sexual gesture towards her. Nobody witnessed that gesture. When Jones reported the incident three days later, Robert Mullin ("Mullin"), the Postmaster of the Cannonsburg facility and Lavorgna's and Jones's supervisor, conducted an investigation.

Shortly before Mullin began the investigation, Jones had made a complaint that Mullin had engaged in gender discrimination. Further, seven days after Jones complained about Lavorgna, she filed a union grievance against Mullin for alleged unfair treatment by Mullin. Finally, Mullin had been demoted in the past following an investigation of his alleged sexual harassment of female subordinates.

The initial investigation proved inconclusive. Jones subsequently told Mullin that witnesses would be able to corroborate her story. The witnesses were alleged to have heard Lavorgna "confess" that he had made the sexual gesture toward Jones. Though Mullin found that these witnesses did, in fact, support Jones's version of events, the witnesses (Rob Coyle and Donald Caldwell) have stated that Mullin

2

mischaracterized their statements. Indeed, they state that they only told Mullin that Lavorgna explained what Jones alleged he had done.

Another incident occurred on March 9, 2004. On that date, Mullin entered the work room floor to find Lavorgna laughing. Apparently, Lavorgna was laughing loudly and Mullin deduced that the laughter stemmed from Lavorgna having had Jones served at work with a harassment complaint filed with the local magistrate. Jones provided Mullin with a statement that Lavorgna's laughter was meant to mock her. Mullin explained to Lavorgna that it was reasonable for Jones to believe his laughter was directed at her.

Other coworkers contend that it was a common practice to joke and laugh while on the work room floor. Indeed, nobody had ever been reprimanded for such behavior in the past. Lavorgna contends that he was mocking the laughter of a different coworker at the time. Another coworker confirms this representation, but states that Mullin never interviewed him about the incident.

On March 10, 2004, Lavorgna and his Union Steward met with Mullin in Mullin's office. Mullin and Lavorgna have different views on what exactly transpired at the meeting. Lavorgna contends that Mullin began screaming and swearing at him and that Lavorgna began to feel ill and had to leave to see a doctor.

Mullin filled out a March 16, 2004 Request for Disciplinary Action. It included two counts of sexual harassment (inappropriate behavior / hostile work environment - based upon the sexual gesture and the laughing incident); providing a false written statement (apparently Lavorgna's written version of events

3

surrounding the alleged sexual gesture); failure to follow instructions (at the March 10, 2004 meeting); and "AWOL" on March 10th-13th. On March 25, 2004, Lavorgna received a Notice of Suspension of 14 days or less. The Notice referenced both the sexual gesture and the laughing incident but did acknowledge that Lavorgna had supplied excused absences for March 10th through the 13th.

Lavorgna eventually filed two complaints with the Equal Employment Opportunity Commission ("EEOC") - one relating to the suspension and one relating to two main complaints occurring after the suspension. Those complaints focused upon an alleged requirement that he work outside his medical restrictions on two occasions and upon his working a T-6 Tour. With respect to the medical restrictions, following suspension, Lavorgna took a medical leave. Eventually, he returned with a medical restriction that he not work beyond eight hours a day. He contends that, on two occasions, he was forced to work outside of his medical restrictions. It appears that, on August 6, 2004 and again on September 3, 2004, he worked slightly more than an eight hour work day (he worked .96 hours of overtime on August 6th and .58 hours of overtime on September 3rd).

With respect to the T-6 Tour allegations, Lavorgna complains that he was unfairly denied the opportunity to "hold down" (substitute) Lynn Jones's T-6 Tour. A T-6 Tour is a delivery route which consists of a different route for each of the five days a letter carrier works. It generally is accorded a higher rate of pay than a regular city route - where a carrier delivers the same route each working day. Consequently, it is considered an attractive opportunity to other letter carriers.

4

When Lynn Jones broke her wrist in August of 2004 and was unable to work, Lavorgna bid on and won the opportunity to hold down Jones's T-6 Tour. He held down the T-6 Tour from August 14, 2004 through August 25, 2004. When Jones returned to work, she was able to case (sort) the mail, but not deliver the mail. Upon her return, Lavorgna was taken off her T-6 Tour.

Following the EEOC process, Lavorgna instituted this suit. Though the Complaint initially included claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 et. seq., the only claims remaining are those asserted under Title VII set forth in Count I. The Government has filed a Motion for Summary Judgment (see Docket No. [24]) seeking the entry of summary judgment on all the remaining claims asserted under Title VII. For the reasons set forth below, the Motion is granted in part and denied in part.

## STANDARD OF REVIEW

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

## ANALYSIS[1]

### I. EXHAUSTION OF REMEDIES

---

[1] I take a moment to note that, in several places throughout its Brief and Reply Brief, the Government drops footnotes and purports to set forth in those footnotes entire additional bases for the disposal of certain claims. I decline to consider arguments which were not fully briefed and set forth in the text of the Briefs. The Government sought leave, and was granted permission, to file a Brief in Support of Motion for Summary Judgment of 31 pages - 11 pages in excess of a standard filing. Similarly, the Government sought leave, and was granted permission, to file a Reply Brief in excess of the standard page length. There is nothing particularly complicated about this case. This does not involve patent infringement or some other complex litigation. The Government was given more than an adequate number of pages to set forth the bases for its entitlement to summary judgment. Accordingly, additional arguments tucked away in footnotes will not be considered.

As set forth above, Lavorgna filed two EEOC claims - one identified as "4C-150-0062-04," which related to the suspension, and one identified as "4C-150-0101-04," which related to the medical restrictions and T-6 Tour. Both parties apparently agree that the first EEOC claim - the one relating to the suspension - raises only a claim of gender discrimination and was fully exhausted via the administrative process. As to the second EEOC claim - the one relating to the medical restrictions and the T-6 Tour - the Government raises no exhaustion argument with respect to the medical restrictions aspect of that claim.[2] Instead, the Government focuses upon Lavorgna's allegations regarding the T-6 Tour.

More specifically, the Government contends that, during the EEOC investigation, Lavorgna clearly indicated that his T-6 Tour claim was based solely upon retaliation rather than upon both retaliation and gender. Consequently, the Government reasons that any gender basis for the T-6 Tour claim has not been exhausted. In response, Lavorgna concedes that he is not alleging that gender discrimination motivated the Government's actions with respect to the T-6 Tours. See Docket No. [35], p. 6 (stating "Finally, Plaintiff alleges that Defendant's refusal to permit him to hold down a preferential T-6 Tour of duty, were [sic] done in retaliation for his prior complaint of gender discrimination.") Therefore, because Lavorgna is not pursuing a gender based claim under Title VII for the Government's alleged actions in connection with the scheduling of the T-6 Tour, the Motion for

---

[2] In his Response, Lavorgna makes an argument that his claim with respect to being forced to work outside of his medical restrictions is based both upon gender discrimination and retaliation. I offer no conclusion as to whether Lavorgna has exhausted both aspects of this claim because the Government has not moved for summary judgment on this basis.

7

Summary Judgment is denied as moot in this regard.

*II. SUSPENSION - GENDER DISCRIMINATION*

As stated above, one of Lavorgna's EEOC claims relates to the suspension he received on March 25, 2004. Lavorgna is pursuing this claim under Title VII. The Government contends that it is entitled to the entry of summary judgment on this claim because Lavorgna cannot establish a *prima facie* case and because, even assuming that he can, he cannot demonstrate that the nondiscriminatory reason offered for the suspension was pretextual.

After careful consideration, I find that genuine issues of material fact exist which preclude the entry of summary judgment as to both arguments. First, while the Government urges that Lynn Jones is not a fair comparator, the record contains evidence demonstrating that she and Lavorgna share the same job title (letter carrier), hold the same responsibilities (case and deliver the mail), work at the same facility (Cannonsburg, Pennsylvania), and for the same supervisor (Mullin), are both in non-supervisory positions, and are both subject to the same collective bargaining agreement. Indeed, while Jones was out on medical leave, Lavorgna performed her duties.

Indeed, the only reason offered by the Government in support of its argument that Jones is not a fair comparator, is that Jones was not accused of sexual harassment nor disciplined because of it, while Lavorgna was. Under ordinary circumstances, I would agree that this would be a basis for distinguishing Jones as a comparator. However, the record here contains evidence from which a

8

reasonable jury could find that the charge of sexual harassment was fabricated; that the supervisor who investigated the charge knew or should have known of the potential that the charge was fabricated; that the investigation itself was tainted by the fact that the investigator himself may have been motivated to find in favor of the alleged victim due to a past demotion for sexual harassment himself and because of grievances the alleged victim had herself filed against the investigator; and that the investigator reached the conclusion that Lavorgna had engaged in sexual harassment only by mischaracterizing the testimony of two witnesses who specifically decline having confirmed that Lavorgna admitted such action. Reasonable factfinders could conclude that the investigator was motivated to find in favor of the alleged victim at all costs in order to curry favor with her in light of the grievances she had filed against him, and to avoid any suggestion that he was condoning an atmosphere of sexual harassment, having previously been disciplined for having engaged in sexual harassment. This can be viewed as treating Lavorgna less favorably based upon his gender. Contrary to the Government's suggestion, Mullin need not have said anything to Lavorgna about Lavorgna's gender in order to give rise to an inference that he acted with an impermissible discriminatory motive. Thus, but for a "trumped up" charge of sexual harassment and resulting discipline, Jones would be a fair comparator. The Government should not be able to benefit from (if a reasonable factfinder concludes that it has so acted) imposing a knowingly unwarranted suspension and then using that suspension as a means of avoiding a claim of gender discrimination.

9

Additionally, while the Government contends that it has offered a legitimate, nondiscriminatory reason for Lavorgna's suspension - his having engaged in harassment *et cetera*, I find that genuine issues of material fact exist as to whether such reason is pretextual. As stated above, the record contains evidence from which a reasonable finder of fact could conclude that Mullin manipulated the investigatory process and knew, or should have known that Lavorgna did not engage in the actions supporting the suspension.

Consequently, the Motion for Summary Judgment is denied in this regard.

### III. WORKING OUTSIDE OF MEDICAL RESTRICTIONS

Lavorgna also asserts that on August 6, 2004 and again on September 3, 2004, he was forced to work outside of his medical restrictions. The Government contends that it is entitled to summary judgment insofar as this claim is based upon gender discrimination.[3] I find that genuine issues of material fact exist which preclude the entry of summary judgment. First, with respect to the Government's argument that Jones is not a fair comparator because she was *permitted* to work outside her restrictions while Lavorgna was *forced* to work outside his, I find that to be an unfair characterization of Lavorgna's contentions. Lavorgna specifically testified that the Post Office accommodated her restrictions by removing those portions of her duties which required her to exceed her restrictions with respect

---

[3] Again, as stated above, while the Government makes a conclusory statement that the medical restriction claim is based solely upon gender discrimination, Lavorgna appears to believe it is also based upon retaliation. I offer no comment as to whether Lavorgna exhausted his administrative remedies with respect to the retaliation dimension of this claim, as the Government has not properly moved for summary judgment on this issue. Consequently, any ruling pertains only to the gender discrimination portion of this claim.

10

to such things as, for example, lifting. See Ex. 14, p. 111-113. Lavorgna also contends that the Post Office removed the "Ross Common" section of Jones's route so that she could continue working it and permitted her to perform her route mounted rather than on foot. As such, Lavorgna's argument that Jones is similarly situated is not entirely dependent upon the contention that she was permitted to work outside her restrictions while he was forced to work outside of his. Rather, he also argues that the Post Office accommodated her restrictions and failed to accommodate his.

Second, to the extent that the Government contends that Lavorgna cannot complain of having to work beyond eight hours on two occasions because he did not comply with "notice" requirements,[4] I find that genuine issues of material fact exist from which reasonable jurors could conclude that the notice requirements were inapplicable. Lavorgna testified that the notice requirements were intended to apply only when a letter carrier had difficulty completing delivery of his or her route and only when management was unaware of such difficulty. Lavorgna also testified that on the dates in question, he was forced to work overtime because of difficulty completing the delivery of mail other than his own route and that

---

[4] Sections 131.41-131.43 of the U.S. Postal Service Handbook M-41, City Delivery Carriers Duties and Responsibilities state as follows:
> It is your responsibility to verbally inform management when you are of the opinion that you will be unable to case all mail distributed to the route, perform other required duties, and leave on schedule or when you will be unable to complete delivery of all mail. Inform management of this well in advance of the scheduled leaving time and not later than immediately following receipt of mail. Management will instruct you what to do. Complete applicable items on Form 3996, Carrier-Auxiliary Control, if overtime or auxiliary assistance is authorized in the office or on the street.

See Ex. O.

11

management was fully aware of the likelihood that he would not be able to perform all his duties within eight hours. Indeed, according to Lavorgna, management had told him they were short staffed and that he might have to work longer than eight hours. There ensued a discussion about Lavorgna's work restrictions yet, according to Lavorgna, management made no attempts to accommodate his restrictions. Accordingly, I find that genuine issues of material fact exist both with respect to Lavorgna's prima facie case and with respect to the issue of pretext which prevent the entry of summary judgment in the Government's favor at this juncture.

IV. *THE T-6 TOUR - RETALIATION*

Finally, as stated above, Lavorgna contends that the Post Office retaliated against him for having filed EEOC Complaints by removing him from Jones's T-6 Tour which he had successfully bid on.[5] The Government does not dispute that Lavorgna engaged in a protected activity, or that he suffered an adverse action. Instead, the Government contests that a causal connection exists between the two. The Government argues that there Is no evidence of circumstances which justify an inference of retaliatory motive.

The Government explains that Lavorgna was removed from Jones's route when Jones returned in accordance with the Joint Contract Administration Manual

---

[5] Lavorgna's EEOC Complaint in this regard states that Lavorgna was, on an unspecified date, improperly scheduled on a T-6 Tour and, on an unspecified date, that he was not allowed to hold down a T-6 Tour. The Complaint does not specifically detail the parameters of the T-6 claim. However, having read Lavorgna's brief and materials submitted in support thereof, I believe that he is asserting only one claim - "that Defendant retaliated against him by removing him from a preferential tour that he legitimately bid and awarding the tour to female comparator Jones." See Docket No. [35], p. 32.

("JCAM").  The JCAM, which provides guidance for the Postal Service in interpreting the collective bargaining agreement, states, in relevant part:

> ... once an available hold-down position is awarded, the opting employee "shall work that duty assignment for its duration."  An opt is not necessarily ended by the end of a service week.  <u>Rather it is ended when the incumbent carrier returns, even if only to perform part of the duties - for example, to case but not carry the mail.</u>

<u>See</u> Ex. Q (emphasis added).  Thus, the fact that Jones was able to return in only a limited capacity, the Government reasons, is irrelevant to Lavorgna's claim.  According to the Government, Lavorgna was not entitled to hold down the T-6 Tour once Jones returned.  As such, there can have been no retaliation.

Lavorgna counters that Jones was entitled to return to her T-6 Tour for purposes of casing the mail, but that he was nevertheless entitled to hold down that portion of the Tour relating to delivering the mail.  He contends that there is no evidence that another carrier should have received that Tour other than he, or that there was some mistake in the bid process.  He reasons that these actions could be the only legitimate, non-discriminatory reasons that he could have been removed from the Tour.  As such, he insists, he was entitled to continue in that position and the Post Office's unilateral removal of him from that Tour, at least for delivery purposes, constitutes retaliation.

I find Lavorgna's position unconvincing.  The JCAM states that Lavorgna was entitled to hold down Jones's position only until she returned. The undisputed facts of record indicate that she did return, and was able to at least case the mail.  As

13

such, Lavorgna was not entitled to hold down the job. He has not adduced any evidence suggesting that the Post Office removed him for retaliatory motives. Instead, he cites to the fact that the Post Office treated him inequitably as compared with Jones with respect to removing the "Ross Common" section of the tour in compliance with medical restrictions. Yet he is not pursuing a claim of gender discrimination with respect to the T-6 Tour. He is pursuing a claim of retaliation. The references to the Ross Common portion of the route, and having allegedly made an accommodation for Jones, do not suggest any retaliatory motive or give rise to any inferences of retaliation. Consequently, the Motion for Summary Judgment is granted on Lavorgna's claim of retaliation with respect to the T-6 Tour.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER OF COURT

AND NOW, this **18th** day of April 2007, after careful consideration, it is Ordered that the Defendant's Motion for Summary Judgment (Docket No. [24]) is GRANTED in part and DENIED in part. It is GRANTED insofar as summary judgment is entered in favor of the Defendant with respect to Plaintiff's claim under Title VII for retaliation relating to the T-6 Tour. It is DENIED in all other respects.

It is further ORDERED that a Settlement Conference is scheduled for Monday, April 23, 2007 at 9:30 A.M. before the undersigned. Counsel are to have settlement authority and parties are to be either in person or available by telephone. Position letters must be filed three (3) days prior to the conference.

BY THE COURT:


/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge